BOSKO PETRICEVIC                    8443
Attorney at Law, LLLC
P.O. Box 38
Honolulu, Hawaii 96810
Telephone:                    (402) 301-3716
E-mail:                    boskolaw@gmail.com

Attorney for Plaintiffs
KALLIE L. CURTIS, DANIEL J. CURTIS,
NUBIA LIZETH CURTIS

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KALLIE L. CURTIS, DANIEL J. CURTIS, NUBIA LIZETH CURTIS, | ) CIVIL NO. CV 22-00243 SOM-KJM |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) FIRST AMENDED COMPLAINT; ) DEMAND FOR TRIAL BY JURY; ) CERTIFICATE OF SERVICE |
| HAWAIIAN MISSION ACADEMY, domestic non-profit organization; HAWAII CONFERENCE OF SEVENTH-DAY ADVENTISTS, domestic non-profit organization; RALPH S. WATTS, III; ERIK VANDENBURGH; JAY WARREN; RHONDA ("MIKI") L. NELSON; JEAN-MARCEL CLOUZET; TAMMY CLOUZET; JOE LEE; DOE PERSONS 1-10; DOE CORPORATIONS 1-10; DOE PARTNERSHIPS 1-10; ROE "NON-PROFIT" CORPORATIONS 1-10; DOE UNINCORPORATED ORGANIZATIONS 1-10; and ROE GOVERNMENTAL ENTITIES 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | |

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
05 June 2022 11:47 PM lrs
Pam Hartman Beyer, Clerk of Court

## FIRST AMENDED COMPLAINT

COME NOW Plaintiffs KALLIE L. CURTIS, DANIEL J. CURTIS, and NUBIA LIZETH CURTIS, ("Plaintiffs"), by and through their undersigned counsel, BOSKO PETRICEVIC, ATTORNEY AT LAW LLLC, and bring this First Amended Complaint against the above-named Defendants, and complain and allege as follows:

### I. PARTIES

1.     Plaintiff KALLIE L. CURTIS ("Kallie"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii.

2.     Kallie is presently enrolled in the 12th grade at the Hawaii Mission Academy in Honolulu, Hawaii.

3.     Plaintiff DANIEL J. CURTIS ("Mr. Curtis" or "Daniel"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii.

4.     Mr. Curtis is Kallie's father.

5.     Plaintiff NUBIA LIZETH CURTIS ("Mrs. Curtis" or "Nubia"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii.

6.     Mrs. Curtis is Kallie's mother.

7.     Defendant HAWAIIAN MISSION ACADEMY ("HMA"), at all relevant times mentioned in this Complaint, is a State of Hawaii non-profit corporation

organized and existing under the laws of the State of Hawaii and does business in the City and County of Honolulu, State of Hawaii.

8.      Defendant HAWAII CONFERENCE OF SEVENTH-DAY ADVENTISTS ("SDA"), at all relevant times mentioned in this Complaint, is a State of Hawaii non-profit corporation organized and existing under the laws of the State of Hawaii and does business in the City and County of Honolulu, State of Hawaii.

9.      Defendant SDA is the owner and operator of Defendant HMA.

10.      Defendant RALPH S. WATTS, III, ("Watts"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii

11.      Defendant Watts at all relevant times mentioned in this Complaint, serves and/or served as President of the HAWAII SEVENTH DAY ADVENTIST CONFERENCE and is employed by the Defendant SDA.

12.      Defendant ERIK VANDENBURGH ("Vandenburgh"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii

13.      Defendant Vandenburgh at all relevant times mentioned in this Complaint, serves and/or served as President of the HAWAII SEVENTH DAY ADVENTIST CONFERENCE and is employed by the Defendant SDA. During all relevant times mentioned in this Complaint, Defendant Vandenburgh took over for Defendant Watts

as SDA president and further conspired with other Defendants to escalate retaliation against Plaintiffs and obstruct justice that Plaintiffs were seeking.

14.     Defendant JAY WARREN ("Warren"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii.

15.     Defendant Warren at all relevant times mentioned in this Complaint, serves and/or served as Conference Secretariat and/or Deputy to the President of the Hawaii SDA Conference and is employed by the Defendant SDA.

16.     Defendant RHONDA L. NELSON ("Nelson"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii.

17.     Defendant Nelson at all relevant times mentioned in this Complaint, serves and/or served as Superintendent of Education of Hawaii Conference of SDAs and is employed by the Defendant SDA.

18.     Defendant JOE LEE ("Lee"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii.

19.     Defendant Lee at all relevant times mentioned in this Complaint, serves and/or served as Principal of HMA.

20.     Defendant JEAN-MARCEL CLOUZET ("Pastor Jean" or "Jean"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii.

21.     Defendant Jean, at all relevant times mentioned in this Complaint, serves and/or served as District Pastor of the SDA and/or as a HMA Religion/Bible Teacher.

22.     Defendant HMA employs Defendant Lee at HMA.

23.     Defendants SDA and HMA employ Defendant Clouzet as a District Pastor.

24.     Defendant TAMMY CLOUZET ("Tammy"), at all relevant times mentioned in this Complaint, is a resident of the City and County of Honolulu, State of Hawaii.

25.     Defendant Tammy is married to Defendant Pastor Jean.

26.     Defendant Tammy was invited as a guest speaker to Pastor Jean's Bible Class on February 9, 2022.

27.     Upon information and belief, Defendant Tammy was neither authorized nor pre-approved to appear as a guest speaker at Defendant HMA on or about February 9, 2022.

28.     Upon information and belief, and at all relevant times mentioned in this Complaint, Defendant SDA employees, presidents, owners, agents and/or representatives (including but not limited to Defendants Watts, Warren, Nelson, Lee and Clouzet) were acting within the course and scope of their duties as employees, presidents, owners, agents and/or representatives of Defendant SDA; therefore, Defendant SDA is liable for the fraudulent, conspiratorial, intentional, negligent and/or tortious and/or wrongful conduct of said employees, presidents, owners, agents and/or representatives pursuant to the doctrine of

Respondeat Superior and/or principles of Agency.

       29.     Upon information and belief, and at all relevant times mentioned in this Complaint, Defendant HMA employees, presidents, owners, agents and/or representatives (including but not limited to Defendants Watts, Warren, Nelson, Lee and Clouzet) were acting within the course and scope of their duties as employees, presidents, owners, agents and/or representatives of Defendant HMA; therefore, Defendant HMA is liable for the fraudulent, conspiratorial, intentional, negligent and/or tortious and/or wrongful conduct of said employees, presidents, owners, agents and/or representatives pursuant to the doctrine of Respondeat Superior and/or principles of Agency.

       30.     Defendants DOE PERSONS 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, ROE "NON-PROFIT" CORPORATIONS 1-10, DOE UNINCORPORATED ORGANIZATIONS 1-10 and ROE GOVERNMENTAL ENTITIES 1-10, are sued herein under fictitious names for the reason that, after thoroughly investigating the facts of the action, said Defendants' true names and identities are presently unknown to the Plaintiffs, except upon information and belief, that they are connected in some manner with the named Defendants and/or were the agents, servants, employees, employers, representatives, co-venturers, associates, vendors, suppliers, manufacturers, distributors, subcontractors or contractors and/or owners, lessees, assignees, licensees, of the named Defendants and/or were in some manner presently unknown to the Plaintiffs engaged in the activities alleged herein and/or were in some manner responsible for the injuries or damages to the Plaintiffs which was a proximate cause of injuries or damages to the

Plaintiffs and that their "true names, identities, capacity, activities and/or responsibilities" are presently unknown to the Plaintiffs or their attorney. To ascertain the full names and identities of Defendants DOE PERSONS 1-10, DOE CORPORATIONS 1-10, DOE PARTNERSHIPS 1-10, ROE "NON-PROFIT" CORPORATIONS 1-10, DOE UNINCORPORATED ORGANIZATIONS 1-10 and ROE GOVERNMENTAL ENTITIES 1-10, Plaintiffs' counsel have investigated the facts alleged herein through *inter alia*, interviews of the Plaintiffs and the records and files submitted by the Plaintiffs. When the true names and capacities are ascertained, through appropriate discovery, Plaintiffs will move to amend this Complaint to state the true names.

## II. JURISDICTION AND VENUE

31.     Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

32.     All of the events done by all of the above-named Defendants described in this Complaint occurred within the City and County of Honolulu, State of Hawaii, and within the jurisdiction and venue in the Circuit Court of the First Circuit, State of Hawaii.

33.     This Complaint is brought pursuant to Sections 603-21.5(3), 634-35 and 663-1 of the Hawaii Revised Statutes (hereinafter referred to as "HRS").

34.     Venue is proper in the Circuit Court of the First Circuit, State of Hawaii under Section 603-36 of the HRS, as the alleged events arose from actions between the Plaintiffs and Defendants and events and/or omissions giving rise to this action arose in this judicial circuit.

35.     Personal jurisdiction is proper in Circuit Court of the First Circuit, State of Hawaii because all of the above-named Defendants have (or had during relevant times) minimum contacts with the State of Hawaii because all of the Defendants live and do business in State of Hawaii and as such have direct contact with the State of Hawaii. All of the Defendants and Plaintiffs are residents of Hawaii (or were during relevant times).

36.     There is no diversity jurisdiction present in this lawsuit.

37.     None of the causes of actions alleged herein contain any issues regarding any federal law, federal question, or any matter that would belong under federal court jurisdiction.

### III.     <u>NATURE OF THE CASE</u>

38.     Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

39.     In brief, this case is about Kallie, a person of mixed racial heritage, a senior at HMA and expectant college bound high school graduate, who was racially and emotionally victimized and berated by an HMA Pastor and educator and his wife ("Clouzet Defendants") during what should have been a regularly scheduled Bible class on *Marriage and Relationships* (pursuant to SDA's prescribed and published Secondary Religion curriculum standards) at HMA on February 9, 2022. In a disgusting racial attack, Clouzet Defendants racially abused and shamed Kallie into denying her non-Caucasian heritage and humiliated her in front of her friends and fellow students.

40.     Rather than stand up, accept responsibility and take proper corrective action including but not limited to immediately and severely disciplining Defendants Jean and Tammy Clouzet (the "Clouzet Defendants") for their reprehensible behavior towards an HMA high school student, the collective Defendants chose to double down and defend their reprehensible actions, all the while allowing and causing Plaintiff Kallie, a promising college bound student to emotionally, mentally and academically suffer. Thus, placing her senior graduation status in jeopardy.

41.     The racially driven attack on February 9, 2022 should have ended with Defendant Jean's swift termination, a public apology to Plaintiffs' family and a repudiation of the Critical Race Theory (CRT) and Gender Conflict Theory (GCT) – all of which has not been pre-approved for the HMA curriculum.

42.     However, not only did the collective Defendants choose to do nothing, but they engaged in retaliation against Kallie and her family after Plaintiffs made their complaints about this incident.

43.     Due to the collective Defendants' conscious, intentional and/or enormously ignorant failure, negligence, and violation of school policies and curriculum, Plaintiff Kallie and her parents continue to suffer socially, mentally, and emotionally from extreme emotional distress both individually and as a family including the steep decline of Plaintiff Kallie's academic performance as a direct result of the February 9, 2022 incident.

## IV.      FACTS

44.      Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

### CURTIS FAMILY BACKGROUND

45.      Kallie's mother, Nubia has attended the Wahiawa Seventh Day Adventist Church (SDA) since August of 2009.

46.      Nubia is a baptized member of the SDA Church and is a member of the Wahiawa SDA Church, where Defendant Jean Clouzet is a Pastor.

47.      For nearly a decade prior to the arrival of Defendant Jean Clouzet (and his wife and Defendant Tammy Clouzet) as the new Wahiawa District Pastor, Plaintiff Daniel has been fully supportive of Nubia's conversion to Adventism.

48.      Daniel has supported Nubia fully in her religious preferences that included donating publicly and privately tithes to support the SDA church.

49.      Plaintiff Nubia is an official SDA member where Defendant Jean Clouzet serves as a Pastor.

50.      Daniel has also been supportive of Nubia's desire for family involvement in the SDA church, including the critical and foundational decision to raise all three of their children (Plaintiff Kallie included) in the Wahiawa SDA church.

51.      Accordingly, all three of the Curtis children, including Kallie have been raised in the Wahiawa SDA church.

52.     Daniel and Nubia have encouraged SDA schooling for their children by sending their oldest to Walla Walla and educating the younger two children at HMA.

53.     Plaintiff Kallie has attended HMA since August of 2020.

54.     Plaintiff Kallie is presently 18 years old.

55.     Plaintiff Kallie is currently enrolled as a senior at HMA.

56.     Plaintiff Kallie hopes to graduate from HMA on or about June 3-5, 2022.

57.     Plaintiff Kallie has already been accepted to college through the early admission process and received several scholarships prior to the February 9 and 11, 2022 incidents.

58.     Plaintiff Kallie's ability to pursue additional outside scholarships has been impacted directly due to the February 9 and 11, 2022 incidents and subsequent retaliation by all Defendants.

59.     Defendant Jean Clouzet was appointed as the new Bible teacher for HMA in June of 2020.

60.     The collective Defendants were made aware by Plaintiffs of Defendant Jean Clouzet's controversial and hateful political viewpoints since 2020. These viewpoints included hateful racial rhetoric and singling out certain races for abuse and humiliation, open contempt for United States of America's founding, disparaging and hateful remarks of U.S. military members, and distaste for national holidays such as Thanksgiving, Memorial Day and the 4th of July.

61.     In fact, the Plaintiffs even discussed with HMA's Principal Lee in June of 2020 their concern that Defendant Jean would insert very inappropriately his political and social viewpoints in the HMA school lessons.

62.     Plaintiffs made it very clear to HMA's Principal Lee during the in-person meeting that Defendant Clouzet had no right to promote his hateful racial rhetoric and hatred of certain races and United States of America when teaching the HMA's Religious class and curriculum of Plaintiffs' paid private HMA's high school education for their children and that they would immediately disenroll their children if that happened since all of Defendant Clouzet's personal and racist viewpoints ran in direct contradiction and were incompatible to the stated mission and functions codified in governing SDA Education Code of Conduct.

63.     In June of 2020, Plaintiffs expressed concerns to HMA and SDA leadership that Defendant Clouzet must not be allowed to teach his hateful racial rhetoric in violation of SDA and HMA's policies and Education Code of Conduct.

64.     Plaintiffs were reassured in June of 2020 and promised by Defendant Principal Lee that no type of hateful racial rhetoric, Critical Race Theory or Race-Based teachings would occur at HMA or at SDA since they would be in violation of SDA's Education Code of Conduct and HMA's curriculum for which Plaintiffs were paying tuition.

65.     In fact, Principal Lee reassured Plaintiffs that such theories were not a part of the SDA and HMA's curriculum.

66.     Defendant Lee further stated that he addressed the issue involving

- 12 -

CRT and race-based teachings with all faculty and warned them that if they incorporated

such teachings, they would need to leave HMA.

## RACIAL ATTACK AND SHAMING AT HMA ON FEBRUARY 9, 2022

67.    On or about February 9, 2022, Defendant Pastor Jean served in a dual

capacity as SDA's full time district pastor and as HMA's religion teacher.

68.    On or about February 9, 2022, Pastor Jean was conducting his regular

Bible class at HMA.

69.    On or abut February 9, 2022, Plaintiff Kallie attended Pastor Jean's

Bible class at HMA.

70.    On or about February 9, 2022, Defendant Tammy, Pastor Jean's wife

attended Pastor Jean's Bible class as a guest speaker.

71.    Upon information and belief, Defendant Tammy was not authorized or

pre-approved to appear as a guest speaker at Defendant HMA on or about February 9, 2022.

72.    On or about February 9, 2022, while conducting Bible class,

Defendants Pastor Jean and Tammy singled out Plaintiff Kallie in front of her senior

class solely due to the color of Plaintiff's skin, and verbally accused Kallie of having

"white privilege" (hereinafter "February 9 Incident").

73.    Defendants Pastor Jean and his wife Tammy verbally berated, assaulted

and harassed Plaintiff Kallie publicly and in front of her class, unrelenting in their

"teaching" and propaganda of "white privilege, "gender privilege" and other non-licensed

curriculums for the SDA and HMA bible class.

- 13 -

74.     This racial attack was even more disgusting considering the fact that Plaintiff Kallie is not "white", but of mixed racial heritage.

75.     Upon information and belief, Defendants Pastor Jean and Tammy engaged in this cruel and intentional verbal assault on Plaintiff Kallie due to their own self-guided ignorance and racism – incorrectly assuming that Plaintiff's light skin color automatically meant that she was "white."

76.     In fact, Plaintiff Kallie is of "mixed race" ancestry – part Hispanic, part African American, part Caucasian and part Native American

77.     In fact, Plaintiff's own birth mother, Nubia's ancestry is comprised of these three races – Hispanic, African American and Native American.

78.     This racially motivated, purposely humiliating and shameful attack by Defendants Jean and Tammy - an adult teacher and his adult wife - on Plaintiff Kallie, was not only deeply disturbing, racially and emotionally abusive, but also deeply offensive as it completely denigrated Plaintiff's mother's heritage and forced her to accept a factually untrue statement in front of Kallie's entire class.

79.     Such a subject matter was not only highly inappropriate and racist, but such a lecture of "white privilege", rooted in Critical Race Theory (CRT), along with Gender Race Theory (GRT) is also nowhere in the SDA's and HMA's approved Pacific Union Conference curriculum for the 12th grade religion class as codified in the North American Division Seventh-day Adventist Church Secondary Religion Standards, and under which SDA and HMA promised to educate Plaintiffs' children.

80.     After racially insulting and abusing Plaintiff Kallie, Defendants Jean and Tammy continued to "teach", "lecture", and force Plaintiff Kallie and other students to listen to their propaganda and "lecture" of "white privilege, "gender privilege" and other non-licensed curriculums for the SDA and HMA's bible class.

81.     Defendants Jean and Tammy continued to "teach" subjects of Critical Race Theory (CRT) and Gender Race Theory (GRT) despite the fact that neither of them had any training, license or certificate to teach these subjects. Moreover, Defendants Jean and Tammy continued to "teach" subjects of Critical Race Theory (CRT) and Gender Race Theory (GRT) even though none of these subjects were approved by SDA and HMA as official curriculum and none of them had any connection to the HMA's bible class and curriculum.

82.     The religion class as taught by Defendant Jean Clouzet and his wife served no pedagogical purposes other than to shame and degrade Plaintiff Kallie Curtis simply because of her skin color and Defendants' factually incorrect assumption that she was "white" which they made solely based on Kallie's appearance of her skin color.

83.     All of the other Defendants (including SDA and HMA and their leadership) were on prior notice about Defendants Jean and Tammy's unlicensed and unapproved "teachings", and failed to correct or stop this behavior.

84.     Moreover, all of the other Defendants (including SDA and HMA and their leadership) were on prior notice about Defendant Jean's prior hateful and inappropriate racist comments towards other HMA's students.

85.     Few months prior to the February 9, 2022 incident, Defendant Jean took HMA's students to visit Pearl Harbor memorial, and during this visit to Pearl Harbor memorial, Defendant Jean noticed that certain HMA student of Japanese ancestry was missing. Upon realizing that, Defendant Jean asked loudly the present students why was student of Japanese ancestry missing. Defendant Jean then followed up this question with another question which was:

"Is he missing because "he did it" or because "he bombed them"? or words to that effect.

86.     Defendant Jean was clearly making a hateful racist comment about a student of Japanese ancestry with this racist question.

87.     Despite being aware of this misconduct by Defendant Jean, all of the other Defendants (including SDA and HMA and their leadership) did nothing and covered up this incident.

## DENIAL BY DEFENDANTS OF THE FEBRUARY 9, 2022 INCIDENT & RETALIATION AGAINST PLAINTIFF KALLIE & HER PARENTS

88.     However, as disturbing as the initial February 9, 2022 incident was, this was not the end of it.

89.     On February 10, 2022, Plaintiffs immediately complained and brought the disturbing Bible class incident to the collective Defendants' attention.

90.     In an in-person meeting on February 10, 2022, Plaintiff Daniel was told by Defendant Principal Lee that: 1) There was no class lesson plan done by the Defendant Clouzet for February 9, 2022;  2) Principal Lee admitted that Defendant Jean Clouzet

routinely brought his spouse (Defendant Tammy Clouzet) in violation of HMA's policies and school codes and without pre-coordination or pre-approval by HMA to the HMA campus with full knowledge of the SDA and HMA leadership; and 3) That Defendant Jean Clouzet - when confronted by Principal Lee with Plaintiffs' allegations as to what happened in the February 9, 2022 class - admitted guilt and admitted to the allegations as stated by the Plaintiffs;

91.     Despite the above-described actions and Defendant Jean Clouzet's admission of his racial attack on Plaintiff Kallie, neither SDA or HMA or any of the above-named Defendants have ever apologized to the Plaintiffs.

92.     Due to Plaintiffs' allegations and Defendant Jean Clouzet's admission, Defendant Jean Clouzet was only temporary relieved of his duties as the 12th grade Bible study teacher while an investigation – led by Defendant Nelson - occurred into the February 9, 2022 incident.

93.     Upon information and belief, during the time of this "pending investigation" - which can only be described as a sham investigation and a cover up - Principal Lee took over the teaching of the Kallie's 12th grade Bible/Religion class.

94.     The investigation led by Defendant Nelson was a sham since it was wrought with multiple personal and professional conflict of interests between the Defendant Nelson and Defendants Tammy and Jean Clouzet who were Defendant Nelson's personal friends and fellow SDA's leadership members.  Additionally, Defendant Nelson is married to a personal friend and professional peer of Defendant Jean within the Hawaii SDA

Conference. These conflicts of interests are clearly prohibited in the Defendant SDA and HMA's own governing Education Code of Conduct, paragraph ***A25-144 Conflict of Interest***.

95.    Defendant Nelson did not disclose any of these conflicts, and her failure to disclose these conflicts and recuse herself from investigating the Clouzets is nothing short of professional malpractice and personal malfeasance. In fact, Defendant Nelson has actively engaged in cover up of Clouzet Defendants' actions by lying and misrepresenting the truth and calling Plaintiffs liars

96.    Just two days following the outrageous incident on February 9, 2022, instead of swiftly removing Defendant Jean Clouzet from further teaching at HMA pending an investigation for his racial attack on Kallie, the collective leadership at Defendants SDA and HMA saw fit to allow Defendant Jean Clouzet to return to his regular teaching assignments on February 11, 2022.

97.    Even more disturbing, instead of returning to the approved curriculum and refraining from bringing up this racially motivated attack that Defendant Jean and his wife perpetrated against Plaintiff Kallie – who is essentially still a child, Defendant Jean Clouzet decided to double down and proceeded to "dox" Kallie and complain to other students that Plaintiff and her parents had the audacity to complain about him and would be the reason for his and his wife's possible departure from HMA.

98.    Additionally, as stated in a text message by Kallie's classmate who was in attendance at the February 11, 2022 class taught by Defendant Jean Clouzet, Defendant

Jean Clouzet defamed Plaintiffs Daniel and Nubia to all of Kallie's classmates by falsely calling them ill-practicing Adventists for not attending his sermons at the SDA church while he was spewing his hateful racial rhetoric and his open political activism and denouncement of certain political candidates for public offices.

99.     Moreover, in violation of the governing SDA Education Code of Conduct (paragraph A11 132), as well as applicable federal laws relating to church tax exemption which limit SDA church's employees in using their position as a pastor or a denominational employee to advocate for or against any particular candidate for elective public office, Defendant Jean Clouzet regularly used his sermons to engage in political activism and to advocate for and against certain candidates for elective public office.

100.    Thus, after racially assaulting and harassing Plaintiff Kallie on February 9, 2022, Defendant Jean Clouzet then proceeded to emotionally manipulate Plaintiff Kallie's classmates (who are also still children and highly susceptible to manipulation by an SDA pastor) only two days later on February 11, 2022, attempting to turn the rest of the students against Plaintiff Kallie and her father and mother over their complaints of misconduct by Defendants Jean and Tammy Clouzet.

101.    Plaintiffs requested that the Clouzet Defendants be banned from attending HMA school events for the remainder of the school year given the grossly inappropriate conduct displayed by the Clouzet Defendants.

102.     Defendants SDA and HMA, including Principal Lee, stated that they would not ban the Clouzet Defendants, stating that "nothing criminal happened" and "the Clouzets remain in good standing."

103.     Defendant Lee also affirmed that the SDA leadership and HMA Superintendent was part of that decision.

## MENTAL, EMOTIONAL, PHYSICAL, SOCIAL AND ACADEMIC IMPACT ON PLAITNIFF KALLIE

104.     The above-described incidents had a devastating impact on Plaintiff Kallie's emotional, academic, and physical well-being.

105.     Adding insult to injury, not only was Plaintiff Kallie a victim of a racist verbal assault but was then subsequently shunned by her fellow students on the account of Defendant Jean Clouzet's (authorized and condoned by Defendants SDA and HMA) doxing.

106.     Kallie's academic performance has steeply declined since being racially harassed and assaulted by Defendants Jean and Tammy.

107.     Since the February 9 and 11, 2022 incidents, Plaintiff Kallie's academic performance has trended downward from being an excellent student resulting in early admission to college and qualifying for academic scholarships, to significantly struggling with her grades over the next month, and even failing one course.

108.     On top of that, and during this period, Defendant Lee (HMA Principal) threatened Plaintiff Kallie with not graduating due to missed Religion assignments, including ones specifically on the dates of the racial abuse incidents. Defendant Lee even proceeded to give Kallie a grade of "zero" for the February 11, 2022 Bible class because she

"missed the class", even though Defendant Lee knew where Kallie was. Kallie was in Defendant Lee's office on the instruction of Defendant Lee during the February 11, 2022 Bible class. Despite that, Defendant Lee gave Kallie a grade "zero" even though she has turned in her assignment for that day.

109.    Not only did Defendants SDA and HMA did nothing to help or protect Kallie from this racist attack, they continued with their retaliation attempting to make her fail her classes in an effort to not let her graduate with her classmates.

110.    Because of collective Defendants' doxing and retaliation, Kallie eats her lunch by herself nearly every day in school since nobody wants to approach her since all of the Defendants have actively engaged in defaming and ostracizing Plaintiff Kallie and her parents in the SDA and HMA's communities.

111.    Kallie skipped her Senior Class Beach Day due to the significant repercussions of the incident and the failure of the SDA and HMA's leadership to publicly correct and rebuke the Clouzet Defendants misconduct. In fact, Defendants SDA and HMA expressed support for Defendant Clouzet and his actions.

112.    To this day, Kallie is still severely suffering and has had two significant, emotional breakdowns over the February 9, 2022 incident. Since February 9, 2022, and due to all of the Defendants' actions, Kallie is suffering from severe mental illness and mental health damages and injuries.

113.    Plaintiff Kallie continued to attend HMA daily where nobody has defended her, or even offered her any support. In fact, opposite is true. Kallie continued to suffer retaliation at the hands of her HMA's teachers and principals and fellow students.

114.    Kallie has been ostracized by her peers and SDA church during one of the most important and pivotal growing years of her pre-collegiate career and life.

115.    While she struggles academically, socially, and emotionally to overcome the shame, embarrassment, and humiliation of such a wildly inaccurate, inappropriate, undeserved, weirdly bizarre, and perverse racist attack and accusation, Plaintiff Kallie still desired to graduate with her class this year and make the most of her remaining senior year.

116.    However, due to the retaliation of all of the Defendants and due to the February 9, 2022, Kallie's grades have suffered. On example, prior to the February 9 incident, Kallie's grade in bible class was a "B+". Due to the incident and subsequent retaliation, her grade was lowered by Defendant Lee to a "C-". All of the Defendants conspired to retaliate against Kallie and lower her academic performance and grades.

117.    Due to Defendants SDA's and HMA's failures and Defendant Jean Clouzet's retaliation, Plaintiff has been isolated and made to feel like she was the wrongful actor.

118.    Defendants SDA's and HMA's obtuseness in dealing with these incidents and failure to protect and apologize to Plaintiffs have been shameful and beyond belief.

119.    Ironically, Defendants SDA and HMA have gone to unreasonable and unjustifiable lengths to protect the privacy and confidentiality of the actual abusers – the Clouzet Defendants.

120.    Sadly, for the abused student (Kallie) and her parents (Mr. and Mrs. Curtis) Defendants have done absolutely nothing to protect Kallie and her family.

121.    In fact, Defendants have done the opposite with Plaintiff Kallie, allowing Defendant Jean Clouzet to "dox" and direct the ostracization of Kallie by her classmates. Collective Defendants have also retaliated and ostracized all of the Plaintiffs and basically made them unwelcomed in their school and SDA church, which the Curtis family has been faithful members since August of 2009.

122.    Defendants HMA and SDA have chosen to defend the indefensible. Not only that, collective Defendants, including individual Defendants Watts, Warren, Nelson and Lee have gone out of their way to cover up and protect Clouzet Defendants and lie and continue to defame Plaintiffs by denying Plaintiffs' version of the February 9 and 11, 2022 events despite overwhelming evidence that supports Plaintiffs' version.

123.    Furthermore, Defendant Jean Clouzet is still a member of the SDA church in good standing and is still invited to attend and even participate in the upcoming HMA high school graduation during June 3-5, 2022, where Kallie will be and where Kallie will be forced to face Clouzet Defendants who racially attacked and abused her.

124.    Per recent emails received by Plaintiff Nubia, in Defendant Jean's dual role as a district pastor, Defendant Jean is currently sending recruiting emails on behalf of

HMA, representing and holding himself out as an official of HMA and further smugly flaunting and harassing Plaintiffs with his "good standing" despite his racial attack on Kallie and defamation of her parents.

125.     Defendants SDA and HMA, including individual Defendants Watts, Warren, Nelson and Lee, who serve in positions of special trust and authority over the Plaintiff Kallie and Clouzet Defendants, have done nothing to correct this.

126.     Despite the February 9 and 11 incidents, Defendant Jean Clouzet continues to represent and hold himself out as still affiliated with SDA and HMA in his dress, actions and words immediately following the February 9 and 11, 2022 incidents to include recruitment for the school and promotion of the HMA's various events.

127.     This constitutes further harassment against Plaintiffs since Defendant Clouzet continued contacting and harassing the Plaintiffs weekly from the February 9 and 11, 2022 incidents until present.

## RELIGIOUS RETALIATION AGAINST PLAINTIFF KALLIE & HER PARENTS

128.     Given the February 9 and 11 incidents and negative repercussions against Plaintiffs, Plaintiffs requested a private meeting with the Wahiawa SDA church Elders to address the misconduct of Defendants Jean and Tammy.

129.     Instead of responding appropriately to the sensitivity of the situation and harm already done, Head Wahiawa Elder Sharon Quick stated that a meeting with the Elders would only happen with inclusion of Defendants Jean and Tammy Clouzet "in

order to protect the SDA church".

130.     Upon information and belief, individual Defendants Clouzets, Watts, Vandenburgh, Warren, Lee and Nelson have instructed Head Wahiawa Elder Sharon Quick to isolate and retaliate against the Plaintiffs in an effort to further protect the public image and perception of the appointed and ordained leader and his wife of the Wahiawa SDA church.

131.     Instead of having the harm addressed, Plaintiffs are once again being victimized in another duplicitous and public manner by Defendants, completely unable to speak to the Elders in confidence in their own church.

132.     Moreover, at the direction of all Defendants, Plaintiffs cannot get any of the HMA's teachers to talk to them and help them with Kallie's academic struggles that started since the February 9, 2022 incident.

133.     Additionally, in another example of retaliation and ostracization, on or about May 5, 2022,  Mr. Curtis' email was excluded from all HMA school related email list that provided information about his daughter Kallie's academic progress reports, school events and graduation events. Kallie has already missed several events due to this retaliation and removal from HMA's email list.

134.     Moreover, in another despicable and cultish behavior by all of the Defendants, SDA's current sitting president Defendant Vandenburgh initiated a conspiracy with other Defendants to further retaliate against Plaintiffs.

135.     After Plaintiff Nubia (Plaintiff Kallie's mother) sent an email to

Defendant Vandenburgh on May 6, 2022 informing him that Plaintiffs will be initiating a lawsuit and deposing Kallie's classmates, among others, Defendant Vandenburgh conspired with other Defendants to obstruct justice and instruct other SDA's members, parents and Kallie's classmates to not cooperate if they are called to testify.

136.    Based on this conspiracy, completely unsolicited and out of nowhere, one of Kallie's classmates (who witnessed the February 9, 2022 incident) texted Kallie stating she will not testify regarding this case and threatening Kallie not to call her to testify.

137.    Other parents and students have completely ostracized Plaintiffs on the direction of the Defendants and their conspiracy.

138.    Collective Defendants, including individual Defendants Watts, Vandenburgh, Warren, Nelson, Jean Clouzet, Tammy Clouzet and Lee have completely isolated, doxed, and retaliated against the Plaintiffs and conspired and instructed HMA teachers to isolate and retaliate against Plaintiffs, including attempting to make Kallie fail her classes in order to prevent her graduation and make it appear as if this was all simply the result of her own self-made problems.

139.    Not only that, collective Defendants, including individual Defendants Watts, Vandenburgh, Warren, Nelson, Jean Clouzet, Tammy Clouzet and Lee have defamed Plaintiffs to the entire SDA and HMA's community by essentially calling Plaintiffs liars and telling everyone that their account of February 9 and 11, 2022 incidents is not true. Collective Defendants, to the present day, have gone out of their

- 26 -

way to defame and publicly shame Plaintiffs and basically accused them of lying.

140.    As a result, on top of their child being a victim of a racial attack by an employee of SDA and HMA, SDA and HMA have also ruined and damaged the reputation of all the Plaintiffs.

141.    Lastly, as a result of all the above-described actions by collective Defendants, all of the Plaintiffs have suffered physical, mental, emotional, financial and other damages to be proven at trial.

142.    Since February 9, 2022, and due to all of the Defendants' actions, Kallie and her parents – Plaintiffs Daniel and Nubia -  are all  suffering from severe mental illness and mental health damages and injuries.

## V.      CAUSES OF ACTIONS

### A. COUNT I:  NEGLIGENCE
(Against All Defendants)

143.    Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

144.    The Clouzet Defendants and collective Defendants (as Clouzets' supervisors and employers), by racially harassing, intimidating and forcing Plaintiff Kallie, in front of her entire senior class admit to a factually incorrect statement about he racial heritage have acted recklessly, carelessly, in complete disregard for the truth, thereby breaching their duty as educators to care for the well being of their high school students, specifically Plaintiff Kallie.

145.     All of the Defendants have breached their duties to reasonably care for students, including Plaintiff Kallie and to keep her safe.

146.     As a result, Plaintiff Kallie has suffered emotional, mental and physical damages and incurred other damages to be determined at the time of trial.

147.     The Clouzet Defendants, in their misconduct, committed a breach of duty while in an unsupervised position of trust and authority (given to them by the SDA and HMA) over impressionable young students.

148.     The collective Defendants in standing by and allowing the February 9 and 11, 2022 incidents (and subsequent retaliation) to occur, have caused significant emotional, mental and physical damages to Plaintiff Kallie, which renders all of them liable, especially as it pertains to the ongoing retaliation that has continued to perpetuate against Plaintiff Kallie and her parents for speaking out against Defendants' misconduct.

149.     By allowing Defendant Jean Clouzet to resume his regular teaching duties, all of the Defendants (collectively and specifically), including but not limited to Superintendent Ms. Nelson and HMA's Principal Joe Lee, failed to exercise the due care that is expected to protect HMA's children.

150.     Furthermore, allowing Defendant Jean Clouzet to "dox" Kallie **after** SDA and HMA was informed of his racist verbal assault constitutes a clear dereliction of duty by the SDA and HMA's leadership to protect their students from racial and emotional abuse and subsequent retaliations once complained of.

151.    As set forth above, Defendants and/or their employees, agents and/or representatives had a duty of care to Plaintiff in making sure they were properly executing and carrying out their mission to care for and instruct Plaintiff Kallie, a student at HMA.

152.    Defendants and/or their employees, agents and/or representatives breached their duties of care to Plaintiff.

153.    As a direct, proximate and legal cause of the negligence, gross negligence or recklessness of Defendants and/or their employees, agents and/or representatives, Plaintiffs sustained the special and general damages described herein in the amount to be proven and shown at trial.

154.    Plaintiffs (each of them) have been damaged in an amount to be proven at trial.

**B. <u>COUNT II:  NEGLIGENT SUPERVISION</u>**
(Against All Defendants)

155.    Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

156.    As set forth above, Defendants and/or their employees, agents and/or representatives, including individual Defendants Watts, Warren, Nelson and Lee, had a duty of care to Plaintiffs in making sure that their employees were properly supervised and managed while involved in the care and instruction of Plaintiff Kallie, a student at HMA.

157.    As set forth above, Defendants and/or their employees, agents and/or representatives knew and/or were aware that their employees were negligent in performance

of their duties and Defendants did nothing to correct or prevent this behavior by their employees.

160.    Defendants and/or their employees, agents and/or representatives breached their duties of care to Plaintiff.

159.    As a direct, proximate and legal cause of the negligence, gross negligence or recklessness of Defendants and/or their employees, agents and/or representatives, Plaintiffs sustained the special and general damages described herein in the amount to be proven and shown at trial.

160.    Plaintiffs (each of them) were damaged in an amount to be proven at trial.

C.    **COUNT III:  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
(Against all Defendants)

161.    Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

162.    As something that can only be described as shameful, degrading, bullying and racist abuse, the Clouzet Defendants verbally attacked Plaintiff Kallie Curtis – an HMS student and bullied her into "accepting her white privilege".

163.    The outrageousness and inaccuracy of such a statement and imposing it on a young female student surpasses any normal and acceptable boundaries of decency for any reasonable person.

- 30 -

164.    This sort of a racist and shameful attack was only made worse by the fact that Plaintiff Kallie Curtis was singled out in front of her entire senior class because of the physical appearance of her light skin color.

165.    In the past, Plaintiff Daniel Curtis has been a champion and recruiter for the HMA and an avid supporter of his wife's SDA faith.

166.    In return, he has been betrayed by HMA and SDA and his child Kallie was viciously and racially attacked by officials of Defendants SDA and HMA.

167.    Collective Defendants, including individual Defendants Watts, Warren, Nelson, Jean Clouzet, Tammy Clouzet, Lee, SDA and HMA have failed to correct and prevent further retaliation.

168.    All these incidents have caused great marital strife and domestic turmoil in Mr. Curtis' marriage and negatively impacted the raising of their daughter.

169.    As set forth above, the acts, conduct and/or omissions of all Defendants and/or their employees, agents and/or representatives were negligent, reckless and outrageous.

170.    As a result, Plaintiffs have suffered extreme emotional distress, as a direct result of all of the Defendants' actions.

171.    Plaintiffs have further suffered significant emotional, physical and mental injuries as a result of Defendants' above-described actions.

172.    As a direct, proximate and legal cause of the negligence, gross negligence or recklessness of all Defendants and/or their employees, agents and/or

representatives, Plaintiffs (each of them) have sustained the extreme emotional distress and other special and general damages described herein in the amount to be proven and shown at trial.

173.     Plaintiffs were damaged in an amount to be proven at trial.

**D.     COUNT IV:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
       (Against all Defendants)

174.     Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

175.     The Clouzet Defendants attend Wahiawa SDA Church with Plaintiffs and did so prior to the February 9 and 11, 2022 incidents.

176.     Thus, the Clouzet Defendants knew previously that Plaintiffs are a mixed-race family, and that Kallie was of mixed race. Yet, Defendants still racially attacked and subjected Plaintiff Kallie to race shaming rhetoric on February 9, 2022.

177.     This sort of a racist and shameful attack was only made worse by the fact that Plaintiff Kallie Curtis was singled out in front of her entire senior class because of the physical appearance of her light skin color.

178.     The outrageousness and inaccuracy of such a statement and imposing it on a young female student surpasses any normal and acceptable boundaries of decency for any reasonable person.

179.     As a direct result of the above-described incidents, Plaintiff Kallie's grades have significantly suffered – out of her 6 classes, three courses have dropped by two

letter grades and two of the six courses have dropped by three letter grades to now include a "D" and an "F."

180.   Kallie has further suffered significant emotional, physical and mental injuries as a result of Defendants' above-described actions.

181.   All Plaintiffs have further suffered significant emotional, physical and mental injuries as a result of Defendants' above-described actions.

182.   Plaintiff Kallie failed one class in the third quarter and had to kept home from school so that she could catch up with the backlog of assignments.

183.   This has all occurred as a direct result of the February 9 and 11 incidents.

184.   As set forth above, the acts, conduct and/or omissions of Defendants and/or their employees, agents and/or representatives were intentional, reckless and outrageous.

185.   As a result, Plaintiffs have suffered extreme emotional distress, as a direct result of Defendants' actions.

186.   As a direct, proximate and legal cause of the intentional and reckless acts of Defendants and/or their employees, agents and/or representatives as described above, Plaintiffs have sustained extreme emotional distress and other special and general damages described herein in the amount to be proven and shown at trial.

187.   Plaintiffs have been damaged in an amount to be proven at trial.

**E.**     **COUNT V:  BREACH OF CONTRACT, SCHOOL POLICIES & PACIFIC UNION CONFERENCE (PUC) CODE OF CONDUCT**
(Against All Defendants)

188.     Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

189.     The District Pastors and Defendant HMA are separate and subordinate departments under the authority and guidance of the SDA Hawaii Conference.

190.     Defendant Jean Clouzet is employed by SDA as a full time Pastor at the Wahiawa SDA Church and the Hawaii Conference and therefore subject to their rules and regulations.

191.     Defendants Jean and Tammy are active leaders in multiple SDA youth programs across Oahu.

192.     Defendant Clouzet's has and possesses SDA's denomination teaching certifications.

193.     All of the Defendants have broken their policies and regulations codified in the Pacific Union Conference (PUC) Code of Conduct on which Plaintiffs have relied on when they entered into contract with Defendants to pay the money for Kallie to be educated by the SDA and HMA.

194.     This is specifically captured in the SDA'S Nondiscrimination Policy (paragraph A23-160), Harassment Policy (paragraph E10-140), Personal Conduct (3b), Improper Conduct (3c) and the SDA PK-12 Educator's Certification Manual conduct

requirements listed in paragraph 1.4.2 and suspension revocation of certificates - paragraph 4.10.

195.     Upon information and belief, Defendants have alleged that the February 9 Incident involved instruction on Marriage and Relationships.

196.     Assuming that to be true, according to the PUC Standards, the course would fall within the scope of, "BC.12.7 Be able to understand the dynamics of relational and life skills" and " BC.12.7.1 Understand the different stages of relationships (single, friendships, dating, etc")".

197.     There is no logical, reasonable or academic relationship or basis upon which to assert that forcing Plaintiff Kallie to "accept her white privilege" in front of her peers falls within the academic goals or guidelines of understanding the dynamics of relational and life skills or "understanding the stages of relationship" and differentiating between "single, friendships and dating."

198.     Upon information and belief, Defendants falsely portend that the instruction against Plaintiff Kallie to admit "her white privilege" tied into the course on "Marriage and Relationships."

199.     Furthermore, Defendant Jean Clouzet, as a district pastor should have been held to a higher standard in his personal and professional conduct, which he has clearly breached.

200.     Instead, Defendant Jean has been granted immunity and his racist actions and abuse were covered up by the SDA, HMA and the Conference.

201.     Section E10-108 of the PUC Code of Conduct states, "For educational personnel, responsibility for employment policies resides with the union conference board of education and those policies are published in the union *Education Code*. Local conference boards of education are responsible for implementing these personnel policies with educational personnel."

202.     The local conference board of education derives its authority from the local conference executive committee, and is the employing organization referred to hereinafter as the employer.

203.     The local conference board of education has an inherent legal obligation in the employment, changes in employment status, or termination of education personnel.

204.     Defendants have collectively breached that legal obligation.

205.     Defendants Watts, Warren, Jean Clouzet, Lee (Principal HMA) and Nelson (Superintendent of Hawaii SDA Schools) are collectively in direct conflict and/or breached their own code of conduct in their actions or lack of appropriate necessary actions upon identifying both personal and professional misconduct by Jean Clouzet and failing to terminate him or taking corrective action and/or disciple.

206.     The aforementioned individuals Defendants specifically fall under the PUC Code of Conduct due to their job positions.

207.     Defendants have breached their school policies, codes of conduct and

breached Plaintiffs' contract for failure to deliver services and curriculum that was written and agreed upon when first entering into said contract.

208.    Plaintiffs contracted and paid for Bible/Religion classes, not for an indoctrination of race-based teachings and racial attack on their children.

209.    Plaintiffs paid approximately $14,000.00 in full to Defendants in August 2021 for Plaintiff Kallie's annual tuition.

210.    The tuition paid on behalf of Plaintiffs to Defendants HMA and SDA served as contract between the parties.

211.    The Clouzet Defendants, in their misconduct, not only committed a breach of duty while in an unsupervised position of trust and authority (provided to them by Defendants SDA and HMA) over impressionable young students, but also knowingly and willfully engaged in a breach of contract for the specific educational services and religion instruction that Plaintiffs initially contracted for.

212.    The misconduct of Defendants has breached all standards of conduct and expectation in the delivery of a formal, private institutional education that Plaintiffs contracted for at the outset of entering into such a contract with Defendants.

213.    Additionally, Defendants have engaged in improper behavior and personal misconduct, specifically the Clouzet Defendants while in a trusted position of authority over the HMA students.

214.    As a direct, proximate and legal cause of the intentional and reckless acts of Defendants and/or their employees, agents and/or representatives as described above,

Plaintiffs have sustained extreme emotional distress and other special and general damages described herein in the amount to be proven and shown at trial.

215.    Plaintiffs have been damaged in an amount to be proven at trial.

**F.    COUNT VI: DEFAMATION**
        (Against All Defendants)

216.    Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

217.    The Clouzet Defendants defamed Plaintiff Kallie when they accused and forced her to "accept her white privilege" which was a factually untrue statement and stated publicly in the presence of her peers.

218.    The Clouzet Defendants acted with intentional and/or reckless disregard for the truth of the statement that they verbally made and then forced Plaintiff to repeat in the presence of others.

219.    Not only that, collective Defendants have defamed Plaintiffs to the entire SDA and HMA's community by essentially calling Plaintiffs liars and telling everyone that their account of February 9, 2022 incident is not true. Collective Defendants, to the present day, have gone out of their way to defame and publicly shame Plaintiffs and basically accused them of lying.

220.    As a result, on top of their child being a victim of a racial attack by an employee of SDA and HMA, SDA and HMA have also ruined and damaged reputation of all the Plaintiffs.

221.    Lastly, as a result of all the above-described actions by collective

Defendants, all of the Plaintiffs have suffered physical, mental, emotional, financial and other damages to be proven at trial.

222.     Kallie's parents' reputation has also been harmed given the complete falsity of these statements made by the Defendants in trying to excuse and deny the February 9 and 11 incidents, which have also been directly imparted to and impacted Plaintiffs' parents as direct result of their familial relationship.

223.     The Clouzet Defendants, unreasonably pre-occupied with race, failed to consider for one second that someone's skin color might not be completely indicative of someone's racial heritage and accordingly made false and defamatory statements against Plaintiffs for which Plaintiffs continue to suffer the harmful effects of.

224.     Defendants continue to make false and defamatory statements about Plaintiffs for the sole purpose of hurting Plaintiffs and making them look like liars.

225.     As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiffs have and will suffer damage in an amount to be shown at trial.

226.     As a direct, proximate and legal cause of this defamation, committed by all Defendants, Plaintiffs sustained special and general damages in an amount to be proven and shown at trial.

227.     As a direct, proximate and legal cause of the intentional and reckless acts of Defendants and/or their employees, agents and/or representatives as described above, Plaintiffs have sustained extreme emotional distress and other special and general damages described herein in the amount to be proven and shown at trial.

228.    Plaintiffs have been damaged in an amount to be proven at trial.

## G.    COUNT VII: CIVIL CONSPIRACY TO RETALIATE, OBSTRUCT JUSTICE AND ENGAGE IN RETRIBUTION
(Against All Defendants)

229.    Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

230.    Defendants have engaged in a concerted retaliation and retribution against Plaintiffs.

231.    Although Kallie received an early admission entry for college, her academics have sharply declined, which has prevented her from applying for outside scholarship opportunities.

232.    Defendants have displayed zero compassion, sympathy or empathy towards Kallie.

233.    Defendants have done the complete opposite, allowing Kallie's classmates and teachers to ostracize and retaliate against her in hopes of Kallie failing her classes and not being able to graduate, as evidenced in the preceding paragraphs which has impacted her current academic standing considerably.

234.    Furthermore, Plaintiffs have been retaliated against and ostracized in their own Church, as evidenced by the refusal of the Wahiawa SDA Elders to provide a private forum or meeting with Plaintiffs to address their significant concerns involving the Clouzet Defendants. Moreover, Defendants have conspired to ruin Plaintiffs reputation and defamed them and essentially freeze them out of their own SDA church.

235.     Moreover, in another despicable and cultish behavior by all of the Defendants, SDA's current sitting president Defendant Vandenburgh initiated a conspiracy with other Defendants to further retaliate against Plaintiffs.

236.     After Plaintiff Nubia (Plaintiff Kallie's mother) sent an email to Defendant Vandenburgh on May 6, 2022 informing him that Plaintiffs will be initiating a lawsuit and deposing Kallie's classmates, among others, Defendant Vandenburgh conspired with other Defendants to obstruct justice and instruct other SDA's members, parents and Kallie's classmates to not cooperate if they are called to testify.

237.     As a direct, proximate and legal cause of this conspiracy committed by all of the Defendants, Plaintiffs sustained special and general damages.

238.     As a direct, proximate and legal cause of the intentional and conspiratorial acts of Defendants and/or their employees, agents and/or representatives as described above, Plaintiffs have sustained extreme emotional distress and other special and general damages described herein in the amount to be proven and shown at trial.

239.     Plaintiffs have been damaged in an amount to be proven at trial.

## H.   <u>COUNT VIII: LOSS OF CONSORTIUM</u>
(Against All Defendants)

240.     Plaintiffs incorporate as if realleged, all preceding paragraphs of this Complaint as though set forth fully herein.

241.     Pursuant to HRS § 663-3, as a result of the injuries and damages to Plaintiff Kallie, and as a further legal and/or proximate result of Defendants'

aforementioned acts and/or omissions, Plaintiff's father and mother (Nubia and Daniel) have suffered and/or will suffer various economic, special, general and non-economic damages, including but limited to, loss of consortium and protection, loss of love, comfort, companionship, society and affection, mental and emotional distress and pain and suffering, resulting from significant damages to Kallie (mental and physical) to be proven at trial.

242.    As a direct, proximate and legal cause of above-described illegal violations by Defendants and/or their employees, agents and/or representatives as described above, Plaintiffs have suffered actual damages and other special and general damages described herein in the amount to be proven and shown at trial. Plaintiffs have been damaged in an amount to be proven at trial.

## VI.        **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Circuit Court of the First Circuit, State of Hawaii enter judgment granting the following relief on all causes of action as follows:

A.    On all Counts against ALL Defendants;

B.    For an award of special, economic, consequential and general damages to Plaintiffs from ALL Defendants, jointly and severally, in amount proven at trial;

C.    Punitive damages, as the facts aforesaid constitute extreme and outrageous behavior which exceeds all bounds usually tolerated by

decent society.  In committing the above acts and omissions, all

Defendants acted wantonly and/or oppressively and/or with such malice

as implies a spirit of mischief or criminal indifference to civil

obligations and/or there has been some willful misconduct that

demonstrates that entire want of care which would raise the presumption

of a conscious indifference to consequences, justifying an award of

punitive or exemplary damages in an amount to be proven at trial;

D.      That the Circuit Court of the First Circuit, State of Hawaii enter a

declaratory judgment that Defendants have violated the rights of

Plaintiffs;

E.      That the Circuit Court of the First Circuit, State of Hawaii award

Plaintiffs compensatory damages, proximately caused by Defendants'

tortious and abusive conduct, including, but not limited to, general

damages for intentional and negligent infliction of mental and/or

emotional distress, assessed against all Defendants, all in an amount to

be proven at trial;

F.      That the Circuit Court of the First Circuit, State of Hawaii award

Plaintiffs their reasonable attorney's fees and costs of suit herein as well

as prejudgment and post-judgment interest;

G.      That the Circuit Court of the First Circuit, State of Hawaii award

Plaintiffs such other and further relief both legal and equitable as this

Court deems just, necessary and proper under the circumstances.


DATED:  Honolulu, Hawaii; June 5, 2022.

/S/ *BOSKO PETRICEVIC*
BOSKO PETRICEVIC, ESQ.

ATTORNEY FOR PLAINTIFFS
KALLIE L. CURTIS, DANIEL J. CURTIS,
NUBIA LIZETH CURTIS